UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHARLES WILSON                                                                                  PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:20-CV-377-DPJ-FKB

UNITED OF OMAHA LIFE INSURANCE                                                      DEFENDANTS
COMPANY, AMERICAN COMMERCIAL
BARGE LINES, AND AMERICAN
HEALTH & LIFE INSURANCE
COMPANY

ORDER

United of Omaha Life Insurance Company, the sole appearing defendant in this case arising out of its denial of insurance benefits to Plaintiff Charles Wilson, seeks summary judgment on Wilson's claims against it. For the following reasons, United's Motion for Summary Judgment [15] is granted, and Wilson is directed to show cause why the claims against the unserved defendants should not be dismissed under Federal Rule of Civil Procedure 4(m).

I.      Facts and Procedural History

On May 30, 2017, in Pike County, Mississippi, Wilson was injured in a single-car accident when he drove his Dodge Charger off the road, through a ditch, and into two trees. The injuries were serious. His left hand was severed in the wreck, and his left arm was later amputated at the hospital. Wilson made a claim for accidental-limb-loss benefits under two insurance policies that United issued to Defendant American Commercial Barge Lines—Wilson's former employer. The parties refer to those policies as the ADD Rider and the Voluntary ADD. On September 29, 2017, United denied Wilson's claims under both policies, primarily based on intoxication exclusions to coverage.

Over two years later, on May 30, 2020, Wilson submitted a belated appeal to United, challenging its denial of coverage under the Voluntary ADD.  Three business days after that—and before the appeal could be considered—Wilson filed this lawsuit against United, American Commercial, and American Health & Life Insurance Company.  United appeared, answered, docketed the administrative record, and moved for summary judgment.  Wilson initially failed to respond, which prompted a show-cause order.  Wilson then filed a three-page response, and United replied.  As for American Commercial and American Health, Wilson never successfully served those defendants with process, and the time to do so has passed.

II.     Analysis

The Complaint asserts nine state-law causes of action under Mississippi law, but United says they are all preempted by the Employee Retirement Income Security Act of 1974 (ERISA) and should be construed under ERISA.  United is correct on this threshold point, and Wilson does not suggest otherwise in his response.  *See Hogan v. Kraft Foods*, 969 F.2d 142, 144–45 (5th Cir. 1992).  Accordingly, the nine claims are construed as an ERISA claim seeking "to recover benefits due to [Wilson] under" an ERISA-governed plan.  29 U.S.C. § 1132(a)(1)(B).  As to that ERISA claim, United says Wilson failed to exhaust his appeals and presents meritless claims.

   A.     Exhaustion

United first argues that Wilson forfeited his right to sue when he failed to timely appeal the denial of his two insurance claims.  "[C]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits."  *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).

In this case, the two policies had different appeal provisions. The ADD Rider gave Wilson "no [more] than 60 days from [his] receipt of notification of [the] claim review decision to submit a request for an appeal." Admin. R. [10] at 38. The Voluntary ADD gave Wilson "180 days from receipt of notification to submit a request for an appeal." *Id.* at 61. United denied Wilson's claims on September 29, 2017, so Wilson had until November 28, 2017, and March 28, 2018, respectively, to submit requests for appeals. Wilson's sole appeal—presented under the Voluntary ADD—was not submitted until May 28, 2020—more than two years too late.

Wilson never suggests that he filed a timely appeal or that he completed the appeal process—indeed he did neither. But he does offer two arguments for rejecting United's exhaustion defense. First, Wilson says he "attempt[ed] to appeal the decision under both policies." Pl.'s Mem. [18] at 3. This argument is factually unsupported. The Administrative Record includes only a single "Notice of Appeal" Wilson's attorney faxed on May 28, 2020, that "appeal[s] the decision denying payment under [the Voluntary ADD]." Admin. R. [10] at 91. There is no such notice as to the ADD Rider, but Wilson says due to "an oversight on the part of the parties, the record failed to include the appeal." Pl.'s Mem. [18] at 2.

To begin, if Wilson filed another notice of appeal, he should have included it in the Administrative Record or moved to supplement that record after discovering his oversight. *See* Oct. 20, 2020 Text-Only Order (giving Wilson until November 10, 2020, to raise any "issues regarding the content of the administrative record"). Even under Rule 56(c), he offers no evidence of a separate appeal. Regardless, Wilson does not claim the missing notice was timely or that he completed the appeal process. As to the appeal of the Voluntary ADD claim, it was

both untimely and incomplete. Wilson filed it two years late and then filed this suit just three business days later. *See* Admin. R. [10] at 91.

Wilson next contends that the Court should waive the exhaustion requirement. He explains that exhaustion "was clearly futile" because "United maintains that Mr. Wilson is and was not qualified to receive benefits under the plan." Pl.'s Mem. [18] at 3. Wilson offers no further explanation and no legal authority, but he apparently believes exhaustion was futile because United initially denied his claim and now seeks summary judgment affirming that decision.

That argument fails to address a proper basis for establishing futility. In the Fifth Circuit, "[a] failure to show hostility or bias on the part of the administrative review committee is fatal to a claim of futility." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004) (rejecting futility argument because plaintiff made "no such showing" and instead argued that defendant's representations throughout employment established its position on coverage); *accord Gonzalez v. Aztex Advantage*, 547 F. App'x 424, 428 (5th Cir. 2013); *Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 294 (5th Cir. 2008) ("Plaintiffs do not allege that the Plan Administrator or his staff are hostile or biased toward them, so their futility argument must fail."). Like the plaintiffs in these cases, Wilson has not proven hostility or bias. Wilson failed to exhaust.[1]

---

[1] Despite the *McGowin* court's straightforward statement that futility requires proof of "hostility or bias," United was careful to note that such proof is "usually require[d]." Def.'s Reply [20] at 2 (citing *Taylor v. Prudential Ins. Co. of Am.*, 954 F. Supp. 2d 476, 483 (S.D. Miss. 2013) (Lee, J.)). United may well be correct. Tracing the *McGowin* authority to its origin leads to *Denton v. First National Bank of Waco*, 765 F.2d 1295 (5th Cir. 1985). There, the plaintiff argued that the committee was hostile and biased against him, *id.* at 1298, but the Fifth Circuit held that he failed to factually prove that theory, *id.* at 1302 (reversing and rendering). The court did not say this was the only way to prove futility and gave other examples. *Id.* at 1303; *see also Taylor*, 954 F. Supp. 2d at 483 (holding that Fifth Circuit would not require proof of hostility or bias in every

4

B.     Merits

Even if Wilson exhausted his ERISA claim, it still would fail on the merits. "A denial of benefits under an ERISA plan is reviewed either *de novo*, or, where the plan delegates discretionary authority to an administrator or fiduciary to determine eligibility for benefits or to interpret the terms of the plan, for an abuse of discretion." *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 (5th Cir. 1993).

In this case, both policies gave United "the discretion and the final authority to construe and interpret" the policies. Admin. R. [10] at 36; *accord id.* at 67. The Court thus reviews United's denial of benefits under the abuse-of-discretion standard: "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004); *accord Jimenez v. Sun Life Assur. Co. v. Canada*, 486 F. App'x 398, 409 (5th Cir. 2012). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). "A decision is arbitrary and capricious only if it is 'made without a rational connection between the known facts and the decision or

---

circumstance). Assuming Wilson's failure to show hostility or bias is not fatal, his position remains legally incorrect and factually unsupported. Other than observing that he lost his initial claim and United continues to deny coverage—which would be true in every disputed federal suit for denied ERISA benefits—Wilson offers no proof or argument demonstrating that an appeal would be futile. *See Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 n.1 (5th Cir. 2009) (rejecting futility argument that plaintiff raised "in passing" because there was "no indication in the record that Hartford would not have properly considered Swanson's arguments and evidence if she had submitted them within the 180–day period"). Finally, waiving exhaustion on this minimal basis would thwart Congressional intent and gut the policy reasons for the requirement. *See Denton*, 765 F.2d at 1300–01 (explaining reasons for exhaustion requirement).

between the found facts and the decision.'" *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2013) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.2d 211, 215 (5th Cir. 1999)). And as long as there was no abuse of discretion, the decision stands even if the plaintiff presents "substantial evidence, or even . . . a preponderance," supporting the opposite outcome. *Ellis*, 394 F.3d at 273.[2]

As to the coverage decision in this case, the parties first dispute whether Wilson's injuries qualified as covered losses under the policies. *See* Def.'s Mem. [16] at 8; Pl.'s Resp. [18] at 3. But there is no need to address those arguments because even if otherwise covered, both policies exclude losses incurred when the insured was intoxicated. The ADD Rider excludes a loss "caused by the Insured Person [that] is a result of Injuries the Insured Person receives while voluntarily Intoxicated." Admin. R. [10] at 34. It then defines intoxicated as "having a blood alcohol level, at the time of the Accident, which equals or exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs." *Id.* at 31. The Voluntary ADD does not cover "injuries received because the insured person was intoxicated." *Id.* at 71.

There is substantial evidence Wilson was intoxicated when he drove off the road. Following the accident, the hospital administered a blood alcohol content (BAC) test that determined Wilson's BAC was 0.142—nearly twice the legal limit to operate a motor vehicle in Mississippi. *Id.* at 194; *see* Miss. Code Ann. § 63-11-30(d)(1). When United received Wilson's

---

[2] Wilson never suggests a conflict of interest. But even if United both evaluated the claims for benefits and would be responsible for paying them, that would "not imply a change in the *standard* of review." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir. 2009)) (citation omitted). It would, however, be a "factor in determining whether there is an abuse of discretion in the benefits denial, meaning we take account of several different considerations of which conflict of interest is one." *Id.* Again, Wilson makes no such argument, and it would not change the results even if he did.

medical records containing this test result, it referred the claim to a physician for review. That physician, Dr. Tse, reviewed the medical records and concluded:

> The insured[] was involved in a car accident on 5/30/17 when he had traumatic amputation of his left wrist. The hospital record[s] show his BAC was 0.142, which is above the legal limit of 0.08.
>
> For people with BAC above 0.12, they would have definite impairment of mental facilities, i.e., judgment and memory. They would also have decreased inhibitions and have difficulty in performing many gross motor skills.
>
> Due to the alcohol intoxication, the insured drove the car and collided with a ditch and two trees. It strongly support[s] the loss of limb was the result of injuries received while under the influence of alcohol.

Admin. R. [10] at 338.

Wilson acknowledges that the medical records indicate his BAC was 0.142. But he asserts that the coverage exclusions should not apply because "no chain of custody was conducted along with the BAC test. As such, the hospital cannot *guarantee* to whom this BAC test belonged." Pl.'s Mem. [18] at 2 (emphasis added).

This argument falls short in at least six ways. First, Wilson offers no legal authority to support it. *See id.* Second, other courts have rejected chain-of-custody objections when, as here, "no evidence suggest[s], much less show[s], that the toxicology report was inaccurate or compromised in any way." *Guthrie v. Prudential Ins. Co. of Am.*, No. 12-7358(JLL), 2014 WL 3339549, at *10 (D.N.J. July 8, 2014); *see also Allen v. Standard Ins. Co.*, No. 10-CV-13217, 2011 WL 3625855, at *3 (E.D. Mich. Aug. 17, 2011) (rejecting plaintiff's argument that defendant could not "prove, through a chain of custody, that it was actually her blood sample" because plaintiff failed to "produce[ ] any evidence tending to prove that her blood sample could

7

have been tainted").[3]  Third, there is circumstantial evidence in the Administrative Record that the test was his.  *See* Def.'s Reply [20] at 4.  Fourth, Wilson never denies being intoxicated and offers no proof of sobriety.  Fifth, even if Wilson's summary-judgment response had included proof of sobriety, or proof of a lab mix up, the Administrative Record reflects no such evidence. *See Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 256 (5th Cir. 2018) ("Once the [administrative] record is finalized, a district court must remain within its bounds in conducting a review of the administrator's findings, even in the face of disputed facts.").  Sixth, Wilson could have offered such arguments or evidence—if he had any—through a timely administrative appeal, further demonstrating why his claim must be dismissed for failure to exhaust.

In sum, the Administrative Record provides substantial evidence that Wilson was intoxicated at the time of the accident.  Accordingly, Wilson has not shown an abuse of discretion.  To the contrary, United correctly applied the intoxication exclusions and is entitled to summary judgment.

### D. Remaining Defendants

Finally, as noted, Wilson never effectuated service of process as to American Commercial or American Health.  *See* Pl.'s Mem. [18] at 2 ("Plaintiff did attempt to serve the defendants and all co-defendants to no avail.").  Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion nor on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time.  But if the plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate period.

---

[3] Even under the reasonable-doubt standard in criminal cases, "[m]issing links in the chain of custody go to the weight and not the admissibility of evidence and are properly left to consideration by the jury." *United States v. Doggins*, 633 F.3d 379, 383 (5th Cir. 2011).

In this case, the deadline for service of process was August 31, 2020, and Wilson never sought an extension. The Court therefore gives Wilson notice that it intends to dismiss the claims against American Commercial and American Health without prejudice under Rule 4(m) if he cannot demonstrate good cause for the failure to timely effectuate service of process. Wilson's response to this order should be filed on or before January 22, 2021. Failure to respond will result in the dismissal of American Commercial and American Health with no further notice.

III.   Conclusion

The Court is sympathetic to the life-changing injuries Wilson suffered. But considering all arguments, including those not specifically referenced, Wilson has not demonstrated a basis for overturning United's coverage decision. Accordingly, United's Motion for Summary Judgment [15] is granted. Wilson shall file a response to this Order regarding service of process on American Commercial and American Health on or before January 22, 2021, failing which, those defendants will be dismissed.

**SO ORDERED AND ADJUDGED** this the 14th day of January, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE